## ALTEE v. SOUTH CAROLINA RAILWAY COMPANY.

1  In action by an employé against a railroad company to recover damages for an injury sustained while in its service, the complaint alleged negligence in the employment of plaintiff 's co-laborers. *Held*, that evidence of the quality of such co-laborers was admissible as a link in the chain of evidence, and as such could not be objected to at the time when offered, even though it afterwards appeared that the injury had not resulted from any unfitness on the part of such co-laborers.

2.  Plaintiff having been struck and injured by the roof of a bridge while acting as brakeman on top of defendant's train, brought his action for damages. There being some evidence that he was put in such position by his employer, the railroad company; that the bridge was known to the defendant to be too low to permit a person to stand erect with safety on top of a passing car; and that plaintiff was uninformed and unwarned of this danger, the Circuit judge did not err in refusing to grant a non-suit or to direct a verdict for defendant.

3. This case distinguished from *Davis* v. *Railroad Company, ante* 93.
4. A judge may not order a verdict for defendant unless there has been a total failure of proof as to an essential allegation of the complaint, or where the facts proven do not constitute a cause of action. The distinction between directing a verdict and granting a new trial explained.
5. There is no appeal from an order refusing a new trial, except where such refusal involves an error of law.

Before ALDRICH, J., Richland, November, 1883.

This was an action by Oscar E. Altee against the South Carolina Railway Company, commenced in February, 1883, to recover $25,000 for the loss of an arm and other injuries sustained by him in being knocked from the top of a freight train, in the early morning of November 7, 1882, by the roof of a bridge, through which the train was passing, he being at the time an employé of the company and in his proper position as brakeman. The jury rendered a verdict for plaintiff for $5,000, and judgment was accordingly entered.

The presiding judge, in refusing a motion for new trial, said:

Believing, as I do, that twelve sensible men of business, selected for their integrity, are quite as apt to be right on a question of fact as one judge, I am very loath to assume such a responsibility. It is true, where a verdict is rendered from prejudice or passion, against the evidence, I would not hesitate to grant the motion; yet, if there is evidence to support it, I am very unwilling to set up my individual judgment against the sworn verdict of the twelve men, who know the witnesses and are much better qualified to judge of the credit to be given to each and all than I possibly can be.

It is true, in this case there is but one witness who testifies to the facts connected with the injury for which the plaintiff claims damages—the plaintiff himself. This point was very earnestly and ably urged in the argument, but in the very nature of the case it could not be otherwise; the conductor and the other two brakemen were on the engine. The plaintiff was sent to the top of the train to see that the brakes were off, and to flag down an approaching train to avoid a collision. In the performance of

this duty he was knocked off and received the injuries of which he complains. I see and fully appreciate the argument that the defendant railroad may be put to disadvantages if the story of the injured employé is held to be conclusive against the corporation, yet, if the rule prevailed that the injured employé cannot recover unless his statement is supported by other witnesses, he would be without redress in cases like the present, although the railroad defendant may be guilty of the grossest negligence. It is for this very reason that the verdict of the jury is entitled to the very highest consideration, when it is supported by facts and circumstances. They know the witnesses, who have been examined in their presence, and can much better judge of their credibility and the motives prompting them in making their statements than the presiding judge.

Now, what are the facts here? The covering to the bridge was too low. The defendant railroad knew it, and had known it for sixteen years. They also knew that the law requires them to supply safe appliances for the protection of their employés. They failed to warn the plaintiff of the danger of passing under that bridge standing erect on a freight car, contenting themselves with the position that every employé takes the risk of the employment; and further, that this defect of construction was so patent that every man of common sense and ordinary observation was bound to see and know it; that the plaintiff did know it, and contributed to the injury by his reckless and careless conduct.

The plaintiff says: I did not know it; I was not warned of the danger; I complained of the brakemen who were sent out on the train with me, that they were green hands; the night was dark, and a heavy fog at the river; I was sent up there to put off brakes, and signal the approaching train to avoid a serious collision, and while thus engaged, was knocked off, my right arm torn from my body, my skull fractured, and received other injuries, which greatly endangered my life, and from which I suffered much physical pain and mental anxiety. Now, it is true, this plaintiff was contradicted by two witnesses, who say that he did know of the danger, for on that very night he had warned one of the green hands not to stand erect passing over the bridge. But one of

these witnesses was directly contradicted in a very important statement. The plaintiff was recalled, and swore most emphatically that he never made the statement, for he was ignorant of the danger until he was struck in the head. This is the case as it was given to the jury on a very favorable charge from the court, every one of the defendant's requests to charge was allowed, and the jury was emphatically instructed as follows:

"The question for you is: Did not the plaintiff know of the structure of that bridge from previous experience? Did he warn his co-brakeman at Jamison's that there was danger of being knocked off, standing erect? These are questions for you. Is it incumbent on the defendant railroad to go to the expense of raising all its bridge coverings, so as to enable brakemen to stand erect, when it is known to them by actual experience that they cannot go under without stooping? If this fact was known to the plaintiff, and he had been acting under that knowledge for ten weeks, however you may sympathize with him in his misfortune, you must ask yourselves, did he not contribute to his injury by his own negligence? If you come to that conclusion, your verdict will be for the defendant. Did the plaintiff use ordinary care on that occasion?

"You will consider that this bridge is over the main track; that it is permanent; that it has been there sixteen years, and if any man of ordinary prudence and care could not see and know it is dangerous to stand erect on a freight train passing over it. The bridge having been there so long, and suitable for the traffic of the road, it is not obligatory on the railroad company to pull it down and erect an uncovered bridge. The defendant is not bound to adopt all the modern improvements. Did the plaintiff, then, know of the structure and condition of this bridge when he re-entered the service of the defendant? He had been on the road before; did he have the opportunity to know? If he did know, or had the opportunity to know, the defendant is not liable.

"The case is before you; the plaintiff asks for a verdict for $25,000 on his own statement. The witnesses on the part of the defendant railroad, at Jamison's, swear positively and emphatically that he did know of the danger. It is argued these are interested witnesses, because they are employed by the defendant

railroad. It is for you to balance this interest and say if the plaintiff is not equally interested in maintaining his side of the case."

To grant this motion, I must conclude that this verdict is without evidence, or manifestly against the weight of the evidence. If the evidence of the plaintiff is rejected, it is without evidence. If the testimony of the brakemen is received, it is manifestly against the weight of the evidence. That was the very question submitted to the jury. By their verdict they respond: We believe the plaintiff Altee; we do not believe the witnesses who contradicted him. I will not set up my opinion against theirs; the motion is refused.

Other matters are stated in the opinion. The defendant appealed upon the grounds there stated.

*Messrs. W. H. Brawley* and *John T. Rhett,* for appellant.

*Messrs. Abney & Abney,* contra.

November 14, 1884. The opinion of the court was deliverd by

MR. CHIEF JUSTICE SIMPSON. The respondent, while in the employment of the South Carolina Railway Company as brakeman, received the injury complained of, and for which the action below was brought. His proper place as brakeman was on top of the cars, and while standing erect on a box car, as it passed over the Congaree bridge on the morning of November 7, 1882, the overhead structure being too low for him thus to stand erect, he was struck by the timbers thereof and severely injured.

At the close of the plaintiff's testimony, a motion was made for non-suit on various grounds, which was refused, and at the close of the testimony on both sides, a motion was made by the defendant, that the court instruct the jury to find a verdict for the defendant on several grounds, which was also refused. The case then went to the jury, under the charge of the judge, the defendant having submitted fourteen requests, all of which were granted, except the latter part of the first. The jury found a verdict for the plaintiff for $5,000.

The defendant moved for a new trial, which being refused, the defendant has appealed upon the following five exceptions: "1.

Because the Circuit judge erred in admitting testimony of plaintiff Altee as to the inefficiency of his fellow-brakemen, and as to the train being behind its schedule time.   2. Because the Circuit judge erred in refusing to grant the motion for non-suit on grounds submitted at the trial.   3. Because the Circuit judge erred in refusing to instruct the jury to find a verdict for the defendant on grounds submitted at the trial.   4. Because the Circuit judge erred in refusing to grant a new trial on grounds submitted at trial.   5. Because the Circuit judge, in determining the motion for a new trial, did not exercise his discretion in weighing the testimony as required by law."

The questions of law raised in the appeal are: *First,* should the testimony of Altee (the plaintiff), referred to, have been excluded?   *Second,* should a non-suit have been granted?   *Third,* should the judge have directed a verdict for the defendant? and *Fourth,* should a new trial have been ordered?

The complaint alleged negligence to the defendant under two specifications: 1st. For carelessness and negligence in the employment of unfit and incompetent servants to serve as brakemen with the plaintiff, the incompetency and unfitness of said brakemen being known to the defendant, and in consequence of whose unfitness the plaintiff was exposed to more than ordinary risk and danger, from which his injury resulted.   2nd. For negligence in requiring him to discharge a duty on top of the box cars, which had to pass the Congaree bridge, a structure too low for him to stand erect on said cars in safety while passing, a fact which though known to the defendant was yet never communicated to the plaintiff, and of which he was entirely ignorant.

1st. The plaintiff was the first witness examined, and after a few questions propounded he was asked, "What sort of hands were Herron and Kinsman?"   To this question the defendant objected, on the ground that any testimony as to the character of the employés of the company, or any other matter, unless it could be shown that their alleged inefficiency, or other matter, was one of the proximate causes of the injury, was incompetent.   This objection was overruled, and this is the foundation of the first exception above.   It appears to us that this objection was entirely premature, and was properly overruled at the time it was

made. One of the allegations in the complaint involved a charge of negligence in the employment of co-laborers with the plaintiff, and it was certainly pertinent to that issue to prove the "sort" of hands employed. The Circuit judge could not at this early stage of the case anticipate the future testimony, or a failure on the part of the plaintiff to follow up the testimony given, with evidence that these hands through their unfitness had caused the injury. In fact, the objection itself, or rather the ground of the objection, implies that such testimony would be competent in the event that the inefficiency of these servants constituted one of the proximate causes of the injury. It is true that in the progress of the case it was ascertained that this charge of negligence could not be sustained, and the case ultimately turned upon the second specification, as appears from the charge of the judge, the requests made to charge, and the grounds upon which the motion for a new trial was based. But at the time this testimony was introduced, it seems to us that it was pertinent and competent, and therefore there was no error in admitting it.

2nd. As to the non-suit. "A non-suit is proper only where there is a total failure of testimony by the plaintiff as to his whole case, or to some material and essential part thereof." *Carrier & Harris* v. *Dorrance*, 19 *S. C.*, 32, and the cases there cited. Now, here the negligence charged to the defendant was the fact that the plaintiff had been placed in a position where he was exposed to a danger of which he knew nothing, and of which he was not informed by the defendant, or furnished with any means or guards to warn him of its presence, although said danger was known to the defendant when the plaintiff was employed and placed in said position. Was there a total failure of testimony as to either of these allegations? We think not. On the contrary, the slightest examination of the evidence as reported will show that there was evidence as to all of them. There was evidence as to the place of the plaintiff as brakeman. There was evidence as to the fact that the Congaree bridge was too low to allow one to stand erect on the top of a car in safety as it passed said bridge. There was evidence as to the fact that the defendant knew the height of the bridge and the danger of plaintiff's position. And there was evidence that plaintiff was uninformed

as to this danger; certainly that the defendant had given him no information on the subject. These were the material allegations in the complaint, and we do not see how the Circuit judge could have granted a non-suit in the face of the testimony without invading the province of the jury as to the facts.

The case before the court is a very different case from *Davis* v. *Columbia and Greenville Railroad Company* (*ante*, page 93), recently heard and decided by this court, in the character of the negligence alleged and of the testimony introduced. There the negligence complained of was a failure on the part of the company to furnish the brakeman with safe lanterns while in the discharge of his duty, and in *negligently* erecting a tank too close to the track. The plaintiff was non-suited by the Circuit judge because in his opinion the plaintiff failed entirely to introduce any testimony bearing upon the *negligence* alleged, and this court affirmed the judgment of the Circuit Court. Here, however, the negligence is of a different character. It consisted in exposing the plaintiff to a danger known to the defendant, but unknown to the plaintiff, and without any information or warning to him of the presence of such danger. This was the allegation in the complaint. It was the gist of the action, and the question before the court on the motion for non-suit was, is there any testimony as to these facts? The Circuit judge found that there was; he therefore refused the non-suit, and we think it was properly refused.

3d. Was it error on the part of the Circuit judge to refuse to instruct the jury to find a verdict for the defendant? We do not know any class of cases where a Circuit judge would be warranted in directing a verdict for the defendant, except where there has been a total failure of evidence as to any or all of the essential allegations in the complaint, or where, admitting the facts alleged, yet they do not constitute a cause of action; in other words, in cases where either a non-suit for total absence of testimony would be proper, or where a demurrer for the want of a cause of action would be sustained. Should a clear case, in either of these categories, by some strange accident or oversight reach the jury, we see no reason why the Circuit judge should not direct a verdict for the defendant as matter of law.

The case before the court does not fall under either of these classes. It will not do to say that because a Circuit judge under our system is invested with power to grant new trials, that it follows he is also invested with power to direct a verdict in cases where, if the verdict should be in one way, he would feel compelled to grant a new trial. The power to grant a new trial is very different from that of directing a verdict. A verdict concludes the parties as to the facts of the case; whereas a new trial merely places them back as they stood originally, with the right of further investigation and the opportunity of having any errors corrected by a second trial. A verdict settles the facts, and is final; a new trial reopens the issue without prejudice. The first belongs to the jury; the second is under the control of the court.

4th. Was there error in refusing the motion for a new trial? It must be remembered that this court in cases at law has jurisdiction only as to the questions of law involved. It has no jurisdiction as to the facts, and its power on appeal extends in such cases only to the errors of law assigned. So that, in order to sustain an appeal in such cases, some error of law must be presented and shown to have been committed below. What error of law did the presiding judge commit here in refusing the motion for a new trial? Formerly, before the adoption of the constitution of 1868, the power to grant new trials belonged to the Appeal Court; since the adoption of the constitution, however, the Supreme Court organized thereunder has been denied the power of hearing such motions as an original proceeding, but this power has been conferred by act upon the Circuit Courts, to be exercised by such courts "in all cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of the United States." This power has been invoked in the Circuit Courts most usually upon the facts; as, for instance, where the preponderance of the testimony has been the one way or the other, for excessive damages, and the like. In such cases, the judgment of the Circuit Court is final, and it cannot be reviewed here, because no question but one of fact is involved. *Brickman* v. *S. C. Railroad Company,* 8 *S. C.,* 173; *Steele* v. *C., C. & A. R. R. Co.,* 11 *Id.,* 591.

Where the court below, however, declines to exercise this

power, on the ground that it has not been invested with it, his refusal is appealable, and his judgment may be reviewed, because here would be a question of law, to wit, the existence of the power. *State* v. *David*, 14 *S. C.*, 428, and *Wood* v. *Atlanta and Charlotte R. R. Co.*, 19 *Id.*, 582. And also where the jury refuses to take the law from the court and finds a verdict in direct conflict with the charge of the judge as to some legal proposition laid down governing the case; for the same reason as above, a refusal of a new trial in such a case would be subject to review by this court. *Dent* v. *Bryce*, 16 *S. C.*, 1. The case before the court does not involve either of these questions.

Nor does it, as far as we can see, present any error of law connected with the refusal of the new trial. The Circuit judge, after rendering an oral decision upon this motion, filed a written opinion therein, giving his reasons fully for the refusal. There being no controversy as to the law of the case as laid down by the judge, and all the requests to charge having been in the main granted, there was nothing left but the facts, and the jury having found these in favor of the plaintiff, the judge did not feel at liberty to arrest the verdict; and involving, as the motion did, questions of fact only, or at least substantially, its refusal is unappealable.

No exception having been taken to the charge of the judge, nor any error assigned because of omission on his part to charge defendant's requests, the case here has been free from those important questions of negligence, contributory or otherwise, usually introduced in such cases. We have, therefore, not found it necessary to discuss such questions. On the contrary, the appeal having been based mainly upon the refusal of the non-suit, the refusal to direct the verdict and to order a new trial, and therefore involving only questions of law governing such motions, we have confined ourselves to the questions thus involved, and finding no legal principles applicable to such motions violated in the judgment below,

It is the judgment of this court that the judgment of the Circuit Court be affirmed.